McDOUGALD v. NEW YORK LIFE INS. CO.

(Circuit Court of Appeals, Ninth Circuit. June 19, 1906.)

No. 1,270.

1. INSURANCE—POLICY—MATURITY OF PREMIUM—CONSTRUCTION.

A policy was signed and delivered October 4, 1895, to take effect as of the 30th day of June of that year. It provided for grace of one month in the payment of premiums, and authorized reinstatement within six months after nonpayment of any premium, subject to evidence of good health satisfactory to the company, and declared that it could not be forfeited after it had been in force three full years as thereafter provided. At the time the policy was issued, the insured gave his note for two years' premiums. *Held*, that treating the note as payment. the policy became subject to forfeiture at the expiration of the month of grace after June 30, 1897.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 913.]

2. STATUTES—RETROSPECTIVE OPERATION.

A statute is not retrospective in operation because a part of the requisites for its action is drawn from another statute existing before the passage of the act in question.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 342, 343.]

3. INSURANCE—FORFEITURES—STATUTES.

Laws N. Y. 1897, p. 92, c. 218, § 2, declares that no life insurance corporation doing business within the state shall, within one year after default in the payment of premium, forfeit the policy, unless a written or printed notice, etc., shall have been duly addressed and mailed to the insured or the assignee of the policy. *Held*, that where an insurer subject to such act made no attempt to cancel a California policy until more than a year had elapsed after default in the payment of premium, such act was inapplicable.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 703, 904, 1917.]

In Error to the Circuit Court of the United States for the Northern District of California.

This is an action on a policy of life insurance issued on October 4, 1895, to J. D. McDougald for $10,000, payable to his estate on his death. Prior to his death, which occurred November 17, 1898. he assigned said policy to his sister-in-law, Mrs. Margaret McDougald, as security for an indebtedness, which, after his death, was assumed by his widow (plaintiff in error).

The policy provides that: "The company further agrees that this policy shall be incontestable after it has been in force one full year from the date of the execution of this contract if the premiums have been duly paid as provided herein. This contract is made in consideration of the written application for this policy, which is hereby made a part of this contract, and in further consideration of the sum of six hundred and thirty-nine dollars and —————— cents, to be paid in advance (being the premium for two years' term insurance), and of the payment of four hundred and sixty-five dollars and —————— cents (being the life premium) on the thirtieth day of June in every year thereafter during the continuance of this policy. The benefits and provisions placed by the company on the next page are conditions precedent and are a part of this contract. * * * "

Among the benefits and provisions of the policy which are referred to as conditions precedent are the following: "If any premium is not paid on or before the day when due. this policy shall become void, and all payments previously made shall remain the property of the company, except as here-

inafter provided. A grace of one month will be allowed in payment of subsequent premiums after this policy shall have been in force three months, subject to an interest charge at the rate of 5 per cent. per annum for the number of days during which the premium remains due and unpaid. During the month of grace this policy remains in force, and the unpaid premium, with interest as above, remains an indebtedness to the company, which will be deducted from the amount payable under this policy if the death of the insured shall occur during the month. This policy will be reinstated on written application therefor within six months after nonpayment of any premium, subject to evidence of good health satisfactory to the company, and payment of premiums to date of reinstatement with interest at the rate of 5 per cent. per annum. * * * This policy cannot be forfeited after it shall have been in force three full years, as hereinafter provided." At the time the policy was issued McDougald gave his note in payment of the two-year premium, but never paid the note. The annual life premium was never paid in whole or in part.

The answer of the defendant in error sets up nine separate defenses. In the fifth it is alleged: "(1) That on the 11th day of September, 1895, at the city of Stockton, within this district and state of California, one John D. McDougald made written application to defendant for the issuance and delivery to him of a policy of insurance upon his life, in which application said John D. McDougald expressly contracted and agreed with defendant that if said policy should be issued and delivered to him, no suit should be brought against defendant after two years from the time when a cause of action should have arisen thereon, nor after two years from the time of said applicant's death. (2) That on the 4th day of October, 1895, in compliance with said application, defendant made, executed and delivered to said John D. McDougald and the latter accepted the policy of life insurance applied for, * * * but said policy was so made, executed, and delivered as of, and intended and considered by the parties thereto as commencing on the 30th day of June, 1895, at the request of said John D. McDougald, and in order that he might thereby secure a lower rate and premium upon said policy than if said policy commenced to run at its date aforesaid. (3) Defendant denies that said John D. McDougald or the alleged assignee of said policy, Mrs. John D. McDougald or plaintiff herein, or they or either or any of them, have or has duly or at all performed or complied with all or any of the conditions or provisions of said policy, or any thereof, upon their or each of their part to be kept or performed. (4) That more than two years have elapsed from the time that the alleged cause of action arose which is set forth in the complaint herein to the time when the above entitled action was brought, and the same is therefore barred by the provisions of said application hereinbefore referred to." The court rendered judgment in favor of defendant.

It is assigned as error: (1) That the Circuit Court "erred in deciding that the first life premium referred to in the complaint became due and payable by its terms on June 30, 1897, or within, or at the expiration of 30 days thereafter, or at any time prior to June 30, 1898, or within, or at the expiration of 30 days thereafter; (2) that the court erred in deciding that the New York notice law, as amended by the act of April 8, 1897, is applicable to the policy sued on, and erred in deciding that the act of October 1, 1892, was not applicable to said policy."

Budd & Thompson and Van Ness & Redman, for plaintiff in error.

Charles Page, Edward J. McCutchen, and Samuel Knight, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after making the foregoing statement, delivered the opinion of the court.

The contention of the plaintiff in error is: (1) That by the terms of the policy itself it was in full force at the time of McDougald's death; (2) that if the first ground is untenable, then, under the laws of the state of New York, the defendant in error was obliged to mail notices of premiums to Mrs. McDougald, the assignee of the policy, and that said notices were never sent. Can either of these contentions be sustained? The record does not contain any of the evidence offered at the trial. The complaint sets forth the policy in full, and the contentions of counsel are based exclusively upon the terms of the policy. This being true, it necessarily follows, under the familiar and well-settled rules, that all intendments are in favor of the regularity of the action of the court, and that error will not be presumed, but must affirmatively appear in the record. In the answer of the defendant there are many allegations of fact, which, under the rule above stated, in the absence of the testimony, should be considered as having been proven. We shall, however, consider the contentions of the respective counsel as to the proper construction of the policy and the statutes of New York applicable thereto.

1. The argument of counsel for the plaintiff in error is to the effect that, inasmuch as the policy by its terms was signed and delivered October 4, 1895, the two years' term insurance covered the time of McDougald's insurance to October 4, 1897; that the first 30th day of June occurring after the expiration of the two year's term insurance was in 1898, and that a payment of the annual life premium on that day would, if it had been made, have covered the insurance from the preceding October 4, 1897, to October 4, 1898, or at the earliest to June 30, 1898, and that the premium for the first two years' term insurance was paid by the promissory note, and the next premium did not become due until June 30, 1898; the premiums upon the policy must be construed as having been paid up to June 30, 1898; that under the table of guaranties contained in the policy, the full amount of the insurance was continued without further payment of premiums to January 30, 1901, and McDougald having died prior thereto, to wit, on November 17, 1898, he was covered by the insurance, and the assignee was entitled to recover the full amount of the policy. This contention is based upon an erroneous theory as to the true date of the policy, is wrong in theory, and cannot be sustained.

In the light of all the facts, without extended discussion, we are of opinion that the policy, under its terms, must be construed as having fixed the time when the insurance thereunder commenced to run as June 30, 1895. If any ambiguity exists in the policy upon this subject, it is removed by the application of McDougald for the policy, which, in express terms, is made a part of the policy. It is apparent that it was the intention of the applicant and the insurer that the time when the insurance mentioned in the policy commenced was June 30, 1895, although the policy was not signed until October 4th of that year. The language of the policy indicates, of itself, that this was the contract. The life premium is payable on the 30th day of each June. The 20-year accumulation period expired

on the 30th of June, 1915. The 30th day of June, 1905, designates the day on and after which the company will pay an amount equal to the total premium, together with the amount of the policy, if it shall become a claim. It was also agreed that the policy should not be forfeited after it had been in force three full years (under certain conditions), and by the table of guaranties, the third full year, if the premiums were paid, expired "June 30, 1898." Each year mentioned in the table of guaranties expires June 30th. It necessarily follows that according to the terms of the policy, even conceding for the purpose of this opinion, that there was a payment of premium by the giving of the note by McDougald, the policy became forfeited at the expiration of the month of grace after June 30, 1897, namely, July 31, 1897.

2. An extended argument is presented by the plaintiff in error and numerous authorities cited, to show that the policy in question is a New York contract; that the law of New York relating to the mailing of notices must be complied with; that the policy could not be forfeited except by giving the statutory notice, and finally that the policy is subject to the act of 1892, and not the act of 1897, as claimed by the defendant in error. We deem it unnecessary to discuss at any length the provisions of the various statutes and decisions of the courts of New York based upon the respective statutory provisions. As a general rule, all statutes must be construed, and their provisions enforced, with reference to their object and purpose, and the intention of the Legislature in passing them. So far as the present case is concerned, after examining the statutes in question, we are of opinion that if the laws of New York are applicable to this insurance contract, it must be the statute of 1897 instead of the statute of 1892, that is to govern.

The act of 1897 reads as follows:

"Section 1. Section sixteen of chapter six hundred and ninety of the laws of eighteen hundred and ninety-two, entitled 'An act in relation to insurance corporations, constituting chapter thirty-eight of the general laws,' and known as the insurance law, as amended by chapter nine hundred and seventeen of the laws of eighteen hundred and ninety-five, is hereby amended so as to read as follows:

\* \* \* \* \* \*' \* \* \* \* \* \* \*

"Sec. 2. Section ninety-two of said chapter is hereby amended so as to read as follows:

"Sec. 92. No forfeiture of policy without notice.—No life insurance corporation doing business in this state shall within one year after the default in payment of any premium, installment or interest declare forfeited or lapsed, any policy hereafter issued or renewed and not issued upon the payment of monthly or weekly premiums, or unless the same is a term insurance contract for one year or less, nor shall any such policy be forfeited, or lapsed, by reason of nonpayment when due of any premium, interest or installment, or any portion thereof required by the terms of the policy to be paid, within one year from the failure to pay such premium, interest or installment unless a written or printed notice stating the amount of such premium, interest, installment, or portion thereof, due on such policy, the place where it shall be paid, and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured, or the assignee of the policy, if notice of the assignment has been given to the corporation, at his or her last known postoffice address in this state, postage paid by the corporation, or by any officer thereof, or person appointed by it to collect such

premium, at least fifteen and not more than forty-five days prior to the day when the same is payable. * * * No action shall be maintained to recover under a forfeited policy, unless the same is instituted within one year from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued."

Laws 1897, pp. 91, 92. c. 218.

The act of 1897 went into effect April 8, 1897, and the default in payment of premiums due occurred June 30, 1897. The general rule which we deem applicable to the present case is clearly stated in Black on Interpretation of Laws (section 133, ⋅ pp. 359, 360), as follows:

"When an amendatory act provides that the original statute shall be amended 'so as to read as follows,' and thereupon repeats some of the clauses or provisions of the amended statute and omits others, and at the same time introduces certain new clauses or sections, there are three points which must be chiefly noticed in regard to its operation and effect. In the first place, as to those portions of the original statute which the amendatory act simply retains, it is not generally to be construed as a new enactment. It does not repeal those provisions and then re-enact them in the same terms, but they are to be considered as remaining in force from the time of the original enactment, and as being merely continued in operation by the amendatory statute. * * * In the second place, those provisions which are newly added by the amendatory statute are not to be considered as having been in force from the beginning.· They take effect from the time of the enactment of the amendatory act, and derive their whole efficacy and vitality from the amending law, and not from that amended. * * * In the third place, all those provisions of the original statute which are not repeated in· the amending statute are abrogated or repealed thereby, and are thereafter of no force or effect whatever,"—citing Ely v. Holton, 15 N. Y. 595; Moore v. Mausert, 49 N. Y. 332, and numerous other cases.

See, also, Estate of Prime, 136 N. Y. 347, 352, 32 N. E. 1091, 18 L. R. A. 713; Rosenplaenter v. Provident Sav. Soc. (C. C.) 91 Fed. 728; Id., 96 Fed. 721, 37 C. C. A. 566, 46 L. R. A. 473; and authorities there cited; Florida C. & P. R. Co. v. Foxworth (Fla.) 25 South. 338, 343, 79 Am. St. Rep. 149; Shadewald v. Phillips (Minn.) 75 N. W. 717; Somers v. Commonwealth (Va.) 33 S. E. 381; Railway v. Broulette, 65 Minn. 367, 67 N. W. 1010; Kennedy v. Adams, 24 Nev. 217, 221, 51 Pac. 840; Endlich Interp. Stats. §§ 196, 490.

It is true that a statute is generally to be construed so as to operate prospectively only, unless on its face the contrary is manifest beyond reasonable question. "But a statute is not retrospective, in the sense under consideration, because a part of the requisites for its action is drawn from a time antecedent to its passing." Endlich Interp. Stats. § 280.

As was said by the court below:

"In the case at bar the insurance company made no attempt to cancel the policy within one year after default in payment of premium. The default occurred June 30, 1897; the cancellation by the company of the policy did not occur until July 14, 1898, therefore the law of the state of New York, so far as it relates to the matter of notice neither affects nor modifies the express terms of the contract, and such being the case, they are controlling, and by their plain provisions, the policy was null and void at the time this action was instituted, hence action cannot be maintained thereon."

The result thus announced by the court below is fully sustained by the decisions of the Supreme Court.

In New York Life Ins. Co. v. Statham, 93 U. S. 24, 30, 23 L. Ed. 789, the court said:

"It must be conceded that promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of the premiums when due, but on compounding interest upon them. It is on this basis that they are enabled to offer assurance at the favorable rates they do. Forfeiture for nonpayment is a necessary means of protecting themselves from embarrassment. Unless it were enforceable, the business would be thrown into utter confusion. It is like the forfeiture of shares in mining enterprises, and all other hazardous undertakings. There must be power to cut off unprofitable members, or the success of the whole scheme is endangered. The insured parties are associates in a great scheme. This associated relation exists whether the company be a mutual one or not. Each is interested in the engagements of all; for, out of the coexistence of many risks arises the law of average, which underlies the whole business. An essential feature of this scheme is the mathematical calculations referred to, on which the premiums and amounts assured are based. And these calculations, again, are based on the assumption of average mortality, and of prompt payments and compound interest thereon. Delinquency cannot be tolerated nor redeemed, except at the option of the company. This has always been the understanding and the practice in this department of business. Some companies, it is true, accord a grace of 30 days, or other fixed period, within which the premium in arrear may be paid, on certain conditions of continued good health, etc. But this is a matter of stipulation, or of discretion, on the part of the particular company. When no stipulation exists, it is the general understanding that time is material, and that the forfeiture is absolute if the premium be not paid. The extraordinary and even desperate efforts sometimes made, when an insured person is in extremis, to meet a premium coming due, demonstrates the common view of this matter. The case, therefore, is one in which time is material and of the essence of the contract. Nonpayment at the day involves absolute forfeiture, if such be the terms of the contract, as is the case here. Courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence."

In Mutual Life Ins. Co. v. Hill, 193 U. S. 551, 559, 24 Sup. Ct. 538, 541, 48 L. Ed. 788, the court said:

"Under those circumstances the insured failed to pay, and continued such failure for four years prior to his death. Yet, notwithstanding his failure to perform his part of the contract—and performance by the insured underlies the obligation of the insurance company to perform on its part—this action was brought to compel the same performance by the company that would have been due if he had performed. It is simple justice between two parties to a contract containing depending stipulations that neither should be permitted to exact performance by the other without having himself first performed. It is true cases arise in which one party is enabled to take advantage of some statutory provision and exact compliance from the other without having himself first complied, and courts may not ignore the scope and efficacy of such statutory provisions, but, nevertheless, a judgment for failure to perform against one party in favor of the other, when the latter was the first delinquent, is offensive to the sense of righteousness and fair dealing. We have had before us a series of cases coming from the same jurisdiction in which, when the insured had for a series of years neglected to pay their insurance premiums or perform their parts of the insurance contract their heirs or beneficiaries have, on their deaths, sought to obtain judgments against the insurance company for the amounts which would have been due on the policies if the insured had performed their stipulations in respect to the payment of premiums. Courts have always set their faces against an insurance company which, having received its premiums, has sought by

technical defenses to avoid payment, and in like manner should they set their faces against an effort to exact payment from an insurance company when the premiums have deliberately been left unpaid."

The judgment of the Circuit Court is affirmed.